UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE M. HINDS,

              Plaintiff,                               Case No. 1:06-cv-852

v.                                            HON. JANET T. NEFF

MICHAEL CHERTOFF, Secretary,
U.S. Department of Homeland Security,

              Defendant.
_____/

**<u>OPINION</u>**

Plaintiff, a former employee of the Transportation Security Administration (TSA),[1] filed this civil action *pro se* alleging employment discrimination on the basis of gender and age, retaliation, and several related claims. Defendant filed a Motion to Dismiss and Motion for Summary Judgment (Dkt. 20). Having heard oral argument on the motion, and fully considered the parties' briefs and the extensive record, this Court concludes that defendant's motion should be granted.

I. Background and Facts

Plaintiff, a 51-year-old female, was employed as a security screening supervisor at the Cherry Capital Airport in Traverse City (TVC), from October 6, 2002 to June 20, 2005 (the effective date of her resignation). On September 21, 2005, plaintiff filed a formal complaint of discrimination with defendant's Office of Civil Rights (OCR). When OCR failed to issue a final decision within

_____

[1] The TSA is a subagency of defendant agency Department of Homeland Security (DHS).

180 days (and no appeals had been filed with OCR), plaintiff filed this civil rights action under 42 U.S.C. § 1983.

According to plaintiff,[2] from the time she was hired until just months before she resigned, she "loved her job, … believed she was in a secure position," and that her "background as a paralegal gave her a unique perspective" to understand procedure and regulations (Pl. Resp. Br. 1-2). By April 2004, however, plaintiff realized that male coworkers were being treated differently (more favorably). Plaintiff asserts that after she voiced her concern to her superiors, the treatment that she "viewed as discrimination, but voiced as 'preferential treatment' worsened," along with retaliatory-type treatment of plaintiff (Pl. Resp. Br. 2). Plaintiff asserts that thereafter she became the target of discrimination and retaliation by her superiors, Screening Manager Angela Miller, Assistant Federal Security Director (AFSD) Michael Deegan, and Federal Security Director (FSD) Alan Anderson.

Plaintiff states that Deegan and Miller "often referred to Plaintiff in terms consistent with being 'motherly' and even without always using such wording, their attitude and treatment carried this theme," but the males were not called "fatherly" (Pl. Resp. Br. 3-4). Deegan and Anderson further humiliated plaintiff by placing bets that she "was not on their team," and that her efforts to voice her concerns would not stop, which led to her being considered an outsider (Pl. Resp. Br. 4).

Plaintiff asserts that during late 2004 and early 2005 she made "protected complaints," including a Notice of Hostile Work Environment filed with OCR on December 7, 2004, which resulted in retaliation (Pl. Resp. Br. 4-9). She was given a negative performance evaluation in April 2005 by Miller and placed on a performance improvement plan (PIP) (Pl. Resp. Br. 5-6). She also

---

[2] The facts as presented by plaintiff are briefly summarized for purposes of this opinion.

received a Letter of Reprimand (LOR) on April 14, 2005 concerning a work incident three months

earlier (Pl. Resp. Br. 2-3).

Plaintiff alleges that for the first half of 2005, she had to endure continued retaliation from

Miller (Pl. Resp. Br. 4-5, 10). According to plaintiff, on June 19, 2005, Miller made it clear that she

was trying to force plaintiff out of TSA (Pl. Resp. Br. 10). At the beginning of the day, Miller

withdrew plaintiff's supervisory authority, and later that day, Miller further "demoted" plaintiff by

indicating that plaintiff would be placed in the shift/schedule rotation with a new supervisor who

had  no seniority (Pl. Resp. Br. 10-11). After two more forced meetings with Miller that day,

plaintiff had no alternative but to resign (Pl. Resp. Br. 11-12).

## II. Claims

In her complaint, plaintiff alleged nine counts: (1) discrimination (gender and age), (2)

disparate treatment, (3) retaliation, (4) hostile work environment and intimidation, (5) constructive

discharge, (6) infliction of emotional and physical distress, (7) loss of past/future earnings and

benefits, (8) post-resignation retaliation, and (9) unequal pay. Defendant filed a motion for summary

judgment, FED. R. CIV. P. 56(c), with regard to Counts 1-5 and 9; for dismissal pursuant to Rule

12(b)(1) (failure to exhaust administrative remedies/lack of subject-matter jurisdiction) with regard

to Counts 2-4, 6 and 9; and for dismissal pursuant to Rule 12(b)(6) (failure to state a claim) with

regard to Counts 2-4 and 8.

## III. Legal Standards

### *Summary Judgment Standard*

A motion for summary judgment is properly granted if "the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005).

The summary judgment standard does not focus on the weight or truth of the evidence, but instead requires a determination whether the party bearing the burden of proof has made a sufficient showing on each element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986)*; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Id.* at 249-250.

<em>Rule 12(b)(6) Standard</em>

In deciding a motion under FED. R. CIV. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff to determine whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006); *Harbin-Bey,* 420 F.3d at 575. The court accepts all the factual allegations as true, but need not accept legal conclusions or unwarranted factual inferences. *Kottmyer*, 436 F.3d at 688; *Booker v. GTE.net LLC,* 350 F.3d 515, 517 (6th Cir. 2003).

A pro se litigant is entitled to a liberal construction of his pleadings and filings. *Boswell v. Mayer,* 169 F.3d 384, 387 (6th Cir. 1999). Nonetheless, "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations and legal conclusions "masquerading as factual conclusions" are not sufficient. *Id*. And although pro se pleadings must be accorded a measure of leniency, a pro se litigant is not accorded a more lenient application of the substantive law. *Wolfel v. United States,* 711 F.2d 66, 67 (6th Cir. 1983); *see also*

4

*Brock v. Hendershott,* 840 F.2d 339, 342-43 (6th Cir. 1988), (observing that a nonprisoner pro se litigant's claims should not be given special consideration as a matter of fairness given that those retaining counsel bear the burden of counsel's mistakes).

IV. Analysis

*Plaintiff's Discrimination and Retaliation Claims*[3]

Defendant argues that it is entitled to summary judgment on plaintiff's discrimination claims, Age/Gender Discrimination (Count 1), Disparate Treatment (Count 2), Retaliation (Count 3), Hostile Work Environment and Intimidation (Count 4), because plaintiff cannot establish a prima facie case of discrimination with respect to any of these counts.[4] A plaintiff may establish a prima facie case of discrimination by direct evidence of discrimination or by circumstantial and inferential evidence that creates an inference of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). However, "'mere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination.'"  *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 247 (6th Cir. 1997) (quoting *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir. 1986)).

---

[3] Plaintiff does not cite the specific legal basis of her various discrimination claims, other than stating that she is "in a protected group as defined in Title VII of the United States Civil Rights Act, as amended, for being female and over 40 years of age." As defendant notes, plaintiff's age discrimination claim is presumably under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, since the ADEA protects employees who are at least 40 years old from discrimination based on age. In any event, "[t]he standards, methods, and manner of proof established in Title VII case law are persuasive authority in cases arising under the ADEA, and [] courts routinely employ Title VII and ADEA case law interchangeably." *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830, 834 (6th Cir. 1996). In the absence of citation to specific authority, plaintiff's claims will be considered under discrimination law generally.

[4] Plaintiff's claims as set forth in her complaint and argued *pro se*, while factually detailed, do not comport with traditional legal analyses of the issues presented. The Court has endeavored to give consideration to plaintiff's numerous allegations within the proper legal frameworks to the extent possible.

5

The parties do not argue the issue whether plaintiff's claims involve direct[5] or circumstantial evidence of discrimination. Defendant's motion proceeds on the basis that plaintiff's claims rely on circumstantial evidence. Plaintiff asserts in passing in her statement of facts that conduct similar to the references to her as being "motherly" and the attitude against her have been held to be direct evidence, citing *Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 931 (11th Cir. 1995). However, in *Haynes*, the court focused on comments such as those that "women in general are simply not competent enough to do a particular job," as a classic example of direct evidence. *Id.* There is no such direct evidence in this case. By plaintiff's own description, the references to plaintiff being "motherly" appear to relate in large part to her management style, rather than emanating from discriminatory intent.

When a claim is based on circumstantial evidence, courts apply the three-step burden shifting approach from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *McClain v. Northwest Comty. Corrs. Ctr. Judicial Corrs. Bd.,* 440 F.3d 320, 332 (6th Cir. 2006). The plaintiff must first establish a prima facie case by a preponderance of the evidence. *Texas Dep't of Comty. Affairs v. Burdine,* 450 U.S. 248, 252-253 (1981). If a plaintiff sustains the burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If defendant carries its burden, the burden shifts back to the plaintiff to show that the defendant's reasons were not its true reasons but were a pretext for discrimination. *Id.* at 253; *McClain,* 440 F.3d at 332.

---

[5] "'[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (quoting *Kocak v. Cmty. Health Partners of Ohio, Inc.,* 400 F.3d 466, 470 (6th Cir. 2005)).

*Count 1–Discrimination*

*Count 2–Disparate Treatment*

Plaintiff's complaint alleged separate counts of discrimination based on gender and age and disparate treatment. These counts are both premised on plaintiff's complaints that she was treated less favorably than coworkers who were younger males. Disparate treatment is simply a theory of discrimination, and thus, these claims are properly considered together.

As the basis of her discrimination claim, plaintiff alleged in her complaint that her superiors including AFSD Deegan and Screening Manager Miller made discriminatory and derogatory references to plaintiff by calling her "mother," "earth mother," "motherly, "mom," and "madam secretary," with intent to discomfort plaintiff and isolate her from male supervisors.  She alleges that male supervisors were not called "mother" or "secretary" type names and that she was viewed as deficient by her supervisors because she did not have military or law enforcement background (Compl. ¶¶ 19-24).

In Count 2, "disparate treatment," plaintiff alleges that another supervisor, Jeff Brooks, who was male and younger, "had close contact with Miller and a 'one of the guys' former military service relationship with Deegan and Anderson, with constant discussions of war, killing, blowing things up, and insider military dialogue" (Compl. ¶ 26).  Plaintiff complains that because of the disparate treatment, Brooks was not subject to written discipline, did not have multiple references to "verbal counseling" in his performance evaluation, and was not issued a PIP as was she, even though he committed numerous workplace violations, such as:

- spreading malicious rumors about plaintiff (that she and another supervisor were "on their way out" and that "he would be the top dog"),

- lying to superiors that plaintiff was disrespectful to him,

- tape recording a meeting without advising anyone in advance,

- having flirty, offensive or objectionable conversations with female employees,

- not properly performing his security screening duties (allowing a knife through security, not reporting a knife over four inches, releasing a confiscated knife to the owners, failing to keep checkpoint written records, failing to do verific/calibration on checkpoint equipment),

- repeatedly wearing his former military bomb response team shirt at work despite complaints that it caused fear to passengers,

- not assisting plaintiff with shared supervisor duties.

Defendant argues that plaintiff's claims generally fail to establish a prima facie claim of discrimination because the evidence, including plaintiff's own deposition, undermines any claim that the complained-of actions were based on plaintiff's sex or age (Def. Br. 25). Further, plaintiff did not suffer an adverse employment action because during plaintiff's entire time at TSA, she did not suffer any decrease in pay, a less-distinguished title, or any material loss of benefits (Def. Br. 22-24). Moreover, defendant argues plaintiff cannot overcome defendant's legitimate non-discriminatory reasons for its actions because she has presented no evidence that the real reason she was placed on a PIP was unlawful. That is, the PIP is a non-disciplinary tool used to improve an employee's performance, not for misconduct, and thus, it is not an adverse action. Further, the only disciplinary action taken against plaintiff was a LOR issued by Deegan and upheld by Anderson, which was a minor discipline and did not result in a loss of pay or responsibilities.

In general, to establish a claim of gender or age discrimination, plaintiff must establish (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she

was qualified for the position, and (4) comparable non-protected persons were treater better. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-583 (6th Cir. 1992). To establish a prima facie claim of disparate treatment in the context of this case, in which plaintiff claims that a "comparable non-protected person was treated better," she must produce evidence that at a minimum establishes (1) that she was a member of a protected class and (2) that for the same or similar conduct she was treated differently than similarly-situated non-protected employees. *Id.*

As defendant points out, the majority of plaintiff's complaints are against Miller, and yet plaintiff admitted in her deposition that Miller treated Brooks and three other females better than plaintiff because the others socialized together after work and had a police or military background (Pl. Dep. 18-19, 58). Plaintiff likewise admitted in her deposition that according to her affidavit in November 2005 in coworker's Craig Feese's EEO[6] case, she had complained that females at TVC were treated better than males: "Likewise, in my time at TSA I noticed that females were treated far better than males. I am ashamed to say I was included in this better treatment" (Pl. Dep. 26-27). Plaintiff attempted to explain this statement as only applying up to June 2004; however, as counsel pointed out in the deposition, no such date was stated in the affidavit, which plaintiff signed after she left employment with TSA (Pl. Dep. 27).

With regard to plaintiff's claims of discrimination because of references to her as "mom" and "secretary," defendant points out that viewed in context, Miller's email reference to "Mrs. Secretary" referred to plaintiff "carrying a sheet of papers" after plaintiff emailed Miller, stating: "I'm beginning to feel like everyone cringes when they see me, cuz I'm carrying a sheet of papers

---

[6] Equal Employment Opportunity

requiring them to read something, sign something, or be accountable by volunteering for something"
(Def. Ex. 1, 154). Given their factual contexts, these references do not reflect any discriminatory
animus that resulted in alleged adverse employment actions. *See Burdine,* 450 U.S. at 253.

"'The burden of establishing a prima facie case of disparate treatment is not onerous.'" *Blair
v. Henry Filters, Inc.,* 505 F.3d 517, 528 (6th Cir. 2007) (quoting *Burdine, supra*). "Generally, at
the summary judgment stage, a plaintiff's burden is merely to present evidence from which a
reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under
circumstances which give rise to an inference of unlawful discrimination.'" *Id.* (quoting *Burdine,
supra*).

Plaintiff has failed to establish a prima facie claim of gender or age discrimination. Although
she presents an assortment of isolated complaints that might form the basis of a discrimination claim
if the conduct in combination reflected a discriminatory animus, plaintiff has failed to make that
showing. Plaintiff has failed to show that for the same or similar conduct she was treated differently
than similarly-situated non-protected employees.

Even if plaintiff has established a prima facie claim based on certain isolated complaints,
defendant has set forth legitimate nondiscriminatory reasons for its actions. The burden thus shifts
to plaintiff to produce evidence that the reasons are mere pretext. Plaintiff has not shown that
defendant's reasons for the actions taken were not its true reasons, but rather pretext for
discrimination. *Burdine,* 450 U.S. at 253; *McClain,* 440 F.3d at 332.

*Count 3–Retaliation*

For the same reasoning, plaintiff has failed to establish a claim of retaliation. In her
complaint, plaintiff alleges a variety of circumstances that allegedly constitute retaliation (Compl.

¶¶ 29-62). Plaintiff contends that she made protected complaints of discrimination to the "Agency Ombudsmen (beginning in November, 2004), Office of Inspector General (beginning in December, 2004) and the Office of Civil Rights (beginning in January, 2005)." Further, she "was likewise protected when she advised others she would testify for former employees that had allegedly been subjected to perceived discrimination."  And she "told Deegan and Miller she objected to the environment created by discriminatory treatment of male employees and was ordered, despite objections, on the day supervisor Tom Mair ("Mair") was terminated to lie to Mair." Plaintiff goes on to allege a variety of specific, independent complaints, such as:

- she had assignments taken away from her even though she excelled at them,

- she was subjected to a verbal and violent assault by Deegan, who talked her out of filing a police complaint even though his behavior violated Sections 2, 3, 12, 13, and 17 of defendant's human resource manual (HRM),

- despite complaints, Deegan had yelled at employees before and was never restrained from doing so, nor investigated/disciplined by Anderson,

- Deegan and Miller ridiculed Mair's claims, and when plaintiff sided with Mair, they insulted her for possibly having made claims to the IG and for not supporting their team to say fire drills had been properly conducted,

- Miller was verbally assaultive to plaintiff,

- plaintiff met with defendant's attorney, Christa Brunst, who did not feel that plaintiff's discrimination  allegation was complaint-worthy, but plaintiff learned that Brunst had a conflict because she was engaged to Deegan,

- despite documented yelling and other reported misconduct, Brunst apparently found no fault in Deegan, Miller or Anderson, and supported the latter two in issuing plaintiff a reprimand in March 2005,

- plaintiff's discipline (the first in 2 ½ years) followed no investigation,

- Anderson lured plaintiff into withdrawing her December 2004 complaint that Miller, Deegan, and Anderson created a hostile work environment contrary to the HRM (although because she did not have discrimination training she phrased this complaint as "preferential treatment"), because Anderson told plaintiff that he was investigating her concerns, which was to keep plaintiff from further pursuing her EEO claims,

- when Anderson failed to follow through with an investigation, plaintiff advised she would be resurrecting her complaint, and Anderson promptly authorized her reprimand,

- after resurrecting her complaint and after Deegan left for Texas in April 2005, she was given her first evaluation with unsatisfactory marks and told she would be placed on a PIP,

- a PIP is not designed to include misconduct, but the reprimand was the basis for the PIP based on (1) plaintiff's ponytail slipped once and her hair touched her collar, (2) she appeared to have worn nonissued trousers, despite having only one pair, and a difficult time with menstrual cycles, (3) she appeared to not wear a radio on a couple occasions, although the radios were on extended repair and rarely recharged by the early shift, and (4) allowing subordinates extra bathroom breaks, and (5) not advising of short staffing,

- beginning in May 2005, Miller denied or failed to respond to her requests for annual leave, although other supervisors requests were acted on in short periods of time,

- the performance evaluation, PIP, reprimand, denials of leave, Anderson's failed promises, and a May 2005 threat to change plaintiff's schedule were retaliation for her protected complaints about superiors' EEO or HRM violations.

As with counts 1 and 2, defendant argues that plaintiff has not presented evidence to show an inference of retaliation or overcome defendant's legitimate non-discriminatory reasons for its actions. Title VII protects an employee against retaliation for engaging in protected conduct. *Singfield v. Akron Metro. Housing Auth.,* 389 F.3d 555, 563 (6th Cir. 2004). The employee must show that: 1) he engaged in an activity protected by Title VII; 2) the activity was known to the defendant; 3) he was subjected to an adverse employment action; and 4) the adverse action occurred because of the protected activity. *McClain,* 440 F.3d at 335; *Singfield,* 389 F.3d at 563. The causal connection may be demonstrated by showing that the adverse action was taken shortly after the protected activity and that the plaintiff was treated differently from other employees. *Id.*; *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

Based on the plaintiff's contentions and the record, this Court concurs with defendant that plaintiff has failed to establish a prima facie case of retaliation. Plaintiff has failed to show the requisite causal connection between the alleged adverse employment action and her alleged protected complaints. Plaintiff does not deny that she was disciplined for legitimate reasons, e.g., failing to discipline screener Michael Petzler for an incident on November 29, 2004 (Def. Ex. 1 70, Pl. Dep. 92-96). Plaintiff states "that if the alleged misconduct of November 29, 2004 had been reasonably handled by a neutral investigator and discipline administered within a short time span, Plaintiff can admit she would have had not [sic] reason to doubt the implementation of the discipline for what happened" (Pl. Resp. Br. 16). But plaintiff contends that instead "Miller was not neutral and her

13

conduct was outrageous, with inadequate investigative techniques," and "[i]n the interim, Plaintiff gave notice to the OIG, OCR and her chain-of-command that she challenged her superiors' conduct" (*id.*).

Plaintiff's allegation does not establish an inference of retaliation. Generally, a causal connection is shown by an adverse action that was taken shortly after protected activity, not by a delay in adverse action. Here, plaintiff asserts that the three-month delay in her reprimand was a ploy to lure her into a false sense that issues with Miller and Deegan had been dealt with by Anderson such that plaintiff was compelled to withdraw her complaint from OCR. She also asserts that this three-month time span was used by her "superiors to form additional intent" (*id.*). While the scenario set forth by plaintiff is not implausible, it does not support an inference of retaliation on the facts of this case. The record reflects that numerous nondiscriminatory factors resulted in plaintiff's workplace difficulties and thus, no inference of discrimination can be drawn from the timing and sequence of these events.

Additionally, plaintiff states that "[t]he complaint that initiated all actions thereafter was her belief male co-workers had been discriminated against, and treated less favorably than females" (Pl. Resp. Br. 17-18). As defendant points out, this claim is inconsistent with plaintiff's overall claim of sex discrimination, i.e., that she was treated less favorably because she was female.

Plaintiff further contends that the reassignment of duties imposed by Miller, a negative performance evaluation without prior notice of problems, the fraudulent PIP, and investigation of plaintiff contrary to a Memorandum of Counseling restricting investigation are all retaliation by Miller (supported by Anderson) and to a lesser degree by Deegan (*id.* at 18).

14

Even if plaintiff's claims established a prima facie case of retaliation, given her various admissions of workplace violations, her claim of retaliation is untenable. "[A]n employee's work violations constitute a legitimate, nondiscriminatory reason for adverse employment decisions." *Walborn v. Erie County Care Facility,* 150 F.3d 584, 589 (6th Cir. 1998).

<em>Count 4–Hostile Work Environment and Intimidation</em>

Plaintiff sets forth numerous and varied circumstances as evidence that she was subjected to a hostile work environment and intimidation, not limited to actionable claims of harassment based on sex or age[7] (Compl. ¶¶ 63-75). For instance, plaintiff alleges that contrary to policy or law, her work environment included a screening manager "who insulted, ridiculed, and used a raised voice, and an AFSD who insulted, ridiculed, yelled, and intimidated by 'getting in your face' and/or shaking his fist or finger at employees" (Compl. ¶ 64). Plaintiff argues that she was subjected to a hostile work environment because Miller ridiculed and humiliated plaintiff and made it difficult for her to do her job (Pl. Resp. Br. 21). She cites as examples: breaking into plaintiff's locker and commenting in front others about her "old lady underwear and pads," leaving private performance evaluation information out for other employees to read, repeatedly requiring plaintiff to talk on the phone with Miller while plaintiff was working at the checkpoint, questioning subordinates about plaintiff to look for negative information, and spreading negative and false rumors about plaintiff and her shift (*id.*). These claims do not rise to sex or age harassment in the form of a hostile work environment.

---

[7] The Sixth Circuit has recognized that a plaintiff may advance a hostile-environment claim under the ADEA. *Crawford,* 96 F.3d 834. A prima facie claim requires a showing that: (1) the employee is 40 years old or older; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists of some basis for liability on the part of the employer. *Id.* at 834-835.

15

A victim of harassment must "show. . . that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do his or her job." *Allen v. Michigan Dep't of Corrs.,* 165 F.3d 405, 410 (6th Cir. 1999) (quoting *Davis v. Monsanto Chem. Co.,* 858 F.2d 345, 349 (6th Cir. 1988)). To establish a hostile environment claim of sexual harassment, "a plaintiff must show that: '1) she is a member of a protected class; 2) she was subject to unwelcomed sexual harassment; 3) the harassment was based on her sex; 4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and 5) [the defendant] knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.'" *Abeita v. TransAmerica Mailings,* 159 F.3d 246, 251 n.5 (6th Cir. 1998) (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir. 1997)).

As with plaintiff's other claims, she has not established a prima facie case of hostile work environment sexual harassment. As defendant points out, plaintiff's complaints do not show that plaintiff suffered a hostile work environment based on any prohibited reason under Title VII or the ADEA, i.e., her sex or age.

*Plaintiffs Remaining Claims (Counts 5-9)*

*Count 5–Constructive Discharge*

Defendant argues that it is entitled to summary judgment of this claim because plaintiff cannot establish a constructive discharge as a matter of law because she voluntarily resigned for various reasons unrelated to discrimination (Def. Br. 37). Regardless whether plaintiff can establish a constructive discharge, this claim, standing alone, does not entitle plaintiff to relief. Plaintiff has

not shown that a mere claim of "constructive discharge" is actionable. Accordingly, this claim is properly dismissed pursuant to FED. R. CIV. P. 12(b)(6), failure to state a claim.

<em>Count 6–Infliction of Emotional and Physical Distress</em>

Defendant argues that this claim should be dismissed for lack of subject matter jurisdiction, FED. R. CIV. P. 12(b)(1), because plaintiff failed to exhaust her administrative remedies under the Federal Tort Claims Act (FTCA), which requires that plaintiff first present an administrative tort claim to the federal agency involved and that the claim is either denied or six months have passed, 28 U.S.C. § 2675(a). Subsection (a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

According to the affidavit of Nicolas Panuzio, director of the Office of Claims Management, TSA, cited by defendant (Panuzio Aff., Def. Ex. 5), plaintiff filed no FTCA claims against the TSA. Plaintiff offers no specific response to defendant's argument. Accordingly, dismissal is proper granted for the reasons stated by defendant.

17

*Count 7–Loss of Past/Future Earnings and Benefits*

*Count 8–Post-resignation Retaliation*

Defendant argues that these counts should be dismissed pursuant to FED. R. CIV. P. 12(b)(6), failure to state a claim. As defendant notes, plaintiff's claim for loss of past/future damages is a prayer for damages, and therefore does not state an actionable claim.

With regard to plaintiff's claim for post-resignation retaliation, plaintiff has failed to establish this count as a viable cause of action since plaintiff was no longer employed by TSA. Accordingly, defendant is entitled to dismissal of these claims.

*Count 9–Unequal Pay*

Defendant argues that this claim should be dismissed for lack of jurisdiction, failure to state a prima facie case, and for untimeliness (Def. Br. 41). Plaintiff provides no specific reasoned response to these arguments.

Plaintiff's unequal pay claim is based on her allegations that in May 2005 she learned that (unlike plaintiff), younger, male coworkers, equal or subordinate in position, responsibilities and skills to plaintiff, had been able to negotiate/request a beginning salary higher than the base (Compl. ¶¶ 138). Plaintiff does not substantiate these allegations with relevant evidence or analysis.

> The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. See 29 U.S.C. § 206(d)(1). Thus, to establish a prima facie case of wage discrimination, the EPA plaintiff must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 41 L. Ed. 2d 1, 94 S. Ct. 2223 (1974) (quoting 29 U.S.C. § 206(d)(1)). "Equal work" does not require that the jobs be identical, but only that there exist "substantial equality of skill, effort, responsibility and working conditions." *Odomes v. Nucare, Inc.,* 653 F.2d 246, 250 (6th Cir. 1981). Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments." *Id.*

*Buntin v. Breathitt County Bd. of Educ.,* 134 F.3d 796, 799 (6th Cir. 1998).

According to the affidavit of Human Resource Specialist, Debra Stephens, plaintiff was paid the same or more than every other male supervisory screener at TVC (Def. Reply Br., Stephens Aff.). In her affidavit, Stephens compares in detail, by name, position and rate, the pay of plaintiff and her comparable male coworkers. Stephens avers that she is "unaware of any male Supervisory Transportation Security Screener at TVC who earned more salary than Plaintiff during her employment with TSA" (Stephens Aff. ¶ 9). Plaintiff does not present evidence to the contrary, and thus, has failed to establish a prima facie case under the EPA.

## V. Conclusion

While plaintiff clearly presents herself as an aggrieved former employee and while there may be a factual basis for some of her complaints, she has failed to establish viable legal claims on the bases asserted. Defendant is entitled to dismissal or summary judgment of all nine counts.

DATED: <u>February 6, 2008</u>                     <u>/s/ Janet T. Neff</u>
                                                JANET T. NEFF
                                                United States District Judge